UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| B.K., by and through his mother, K.K. | * | CIVIL ACTION NO. 21-1339 |
| | * | |
| VERSUS | * | SECTION: "T"(1) |
| | * | |
| ST. CATHERINE OF SIENA SCHOOL, | * | JUDGE GREG G. GUIDRY |
| ET AL. | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| *********************************** | * | |

ORDER AND REASONS

Before the Court is the Defendants' Motion to Quash Notice of Deposition or Alternatively for a Protective Order concerning the deposition of Father Timothy Hedrick, which was unilaterally set by the plaintiff to be held on August 3, 2022. (Rec. Doc. 56). The court granted defendants' motion to expedite, and plaintiff filed her opposition memorandum on July 28, 2022. The court offered the parties a status conference to try to assist them in finding a mutually agreeable date for Father Hedrick's deposition. Plaintiff's counsel responded that he was not authorized to reschedule the deposition unless and until the court formally granted the motion to quash. For the following reasons, the Motion to Quash Notice of Deposition or Alternatively for a Protective Order (Rec. Doc. 56) is GRANTED.

Background

This lawsuit concerns alleged disability discrimination by St. Catherine of Sienna School ("SCS") against B.K., the minor child of K.K., who has filed this lawsuit against SCS, its pastor, and its principal. Trial in this matter is set to begin on December 5, 2022. The deadline to complete discovery is September 26, 2022. There is no dispute that the pastor, Father Hedrick, must sit for a deposition. The only problem is that the parties cannot agree to a date.

1

The timeline unfolded as follows. On Thursday, July 14, 2022, plaintiff's counsel emailed defendants' counsel with a notice of deposition unilaterally setting the deposition of Father Hedrick for August 3, 2022.[1] On Tuesday, July 19, 2022, defendants' counsel reported that Father Hedrick was not available on that date and offered August 29. Plaintiff's counsel responded that three weeks' notice is more than adequate, that he was not available on August 29, and that "unless there is a compelling need to move the deposition, let's keep it on August 3." (Rec. Doc. 56-5, at 11). Defendants' counsel responded that they could try to coordinate other dates that would work for everyone. Counsel complained that plaintiff's counsel's attempt to unilaterally set Father Hedrick's deposition without any prior outreach was inappropriate and unprofessional. Counsel reiterated that Father Hedrick was not available on August 3 and would not be appearing on that date.

From there the dispute continued to escalate. Plaintiff's counsel responded that his clients "want to attend Hedrick's deposition, just as Hedrick has attended every deposition so far" and that they were available on August 3. Id. at 9. He complained that defendants' counsel had not provided a reason Father Hedrick could not be available. He insisted that unilaterally setting depositions is not unprofessional. In a subsequent email, he added "[i]f you're not going to tell me the reason Hedrick cannot attend a duly noticed deposition with three weeks' notice, we are going to keep the deposition on that date. If Hedrick doesn't attend, we will move for Rule 37 sanctions." Id.

Defendants' counsel responded that Father Hedrick was unavailable because he was busy preparing for the beginning of the school year. They offered August 15 as an alternative. Counsel explained that while they understood plaintiff's desire and right to attend the deposition, they

---

[1] Defendants had previously offered two dates in mid-July for Father Hedrick's deposition. Plaintiff reports that she could not agree to those dates because defendants had failed to produce discovery necessary to conduct the deposition.

simply asked that the parties work cooperatively to find a date that would work for counsel, clients, and the witness.

Plaintiff's counsel responded that the explanation that Father Hedrick was busy preparing for the school year was completely vague and not compelling. He complained that only two alternatives had been offered. He insisted that defendants file a motion to quash if they were going to insist on moving the deposition for that reason. Defendants then responded by providing August 12, 15, 17, 19, 22, and 29, as alternatives. They added that:

> Father Hedrick is a priest of a Catholic parish that runs a school. The beginning of August is an exceptionally busy time for the parish and school as they prepare for the upcoming school year, which, . . . starts on August 9. . . . Moreover, on August 3rd, he is overseeing a construction project on campus (community playground build), and additionally has an on-campus meeting with the seminary.

Id. at 6. In subsequent email correspondence, defendants suggested a discovery status conference with the court, sending a link to the undersigned's page at the court's website wherein such informal discovery conferences are encouraged:

**Status Conferences:**

Judge van Meerveld encourages status conferences because they can result in a faster and less costly resolution of discovery disputes. Of course, she understands that not all matters can be resolved via a status conference and/or that a party may have strategic reasons for filing a motion instead. For example, if briefing a disputed area of law is required or if the parties wish to present the court with evidence, motion practice may make more sense.

If you think your dispute is one that could benefit from a status conference, you may call Judge van Meerveld's chambers and speak with her law clerk about the dispute. The clerk can assist in determining whether a status conference makes sense under the circumstances, how much time to allow for the conference, and how quickly it needs to be set. Once the conference is set, Judge van Meerveld will typically, though not always, ask each side to submit a brief statement of their position. The parties will be advised of any such requirements. Importantly, just as with a Rule 37 motion, the Court requires that the parties first discuss the dispute with one another via phone/video/in-person to attempt to resolve or at least narrow the issues.

Plaintiff's counsel rejected the idea. "I don't know what an "informal conference " is, but it's not my practice to confer with judges about substantive matters unless the conferences are formal and on the record." (Rec. Doc. 56-5, at 2). He also remarked that plaintiff had earlier been required to file a motion to compel. This Motion to Quash by defendants followed.

Law and Analysis

As noted above, defendants agree that Father Hedrick—a party to this case and an individual with testimony relevant to the dispute—must sit for a deposition. Further, no party here disputes that plaintiff K.K. and B.K.'s father H.K. are entitled to attend the deposition.[2] Indeed, the default rule is that no witness is automatically excluded from a deposition; good cause for a protective order must be established to exclude a witness. See David v. Signal Int'l, LLC, No. CIV.A. 08-1220, 2014 WL 2581319, at *1 (E.D. La. May 14, 2014). The issue is timing.

Although styled alternatively as a motion to quash,[3] the court considers defendants' motion under the standard for obtaining a Protective Order. Federal Rule of Civil Procedure 26(c) provides that the Court "may, for good cause," protect a party from "annoyance, embarrassment, oppression, or undue burden or expense" by, among other things, issuing an order "specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery." Fed. R. Civ. Proc. 26(c)(1). "The burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." United States v. Garrett, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978).

Contrary to plaintiff's counsel's suggestions, it is unprofessional to unilaterally set the deposition of a party represented by counsel without making any prior attempt to find a mutually

---

[2] Plaintiff argues that her right to attend the deposition is of a constitutional dimension. The case cited for this proposition involved an attempt to obtain a protective order excluding a party from attending a deposition. See Hines v. Wilkinson, 163 F.R.D. 262, 264 (S.D. Ohio 1995). No such issue is present here.
[3] The standards cited by the plaintiff for a motion to quash involve subpoenas. There is no subpoena at issue here.

4

convenient date.[4] This is not the only court to hold that to be the case. For example, in Sullivan v. Siemens Generation Servs. Co, the Middle District of Louisiana granted defendant's motion to compel, rejecting plaintiff's argument that defendant's request was untimely because defendant should have just unilaterally set the deposition when plaintiff's counsel failed to respond to requests for dates. No. CV 21-479-BAJ-SDJ, 2022 WL 2761136, at *2 (M.D. La. July 14, 2022). The court concluded that it would "not set precedent for requiring unilateral deposition notices be issued, a practice the Court finds completely unnecessary. The provision of dates a party is available for deposition is both a common courtesy and a common practice in litigation, one the Court strongly feels should continue." Id. Similarly, a court in the Southern District of Florida observed:

> The Court views with concern the unilateral scheduling of depositions absent the inability of the parties, after a good faith effort, to agree on mutually convenient dates. The unilateral setting of depositions (especially coupled with an unwillingness by counsel to reschedule the deposition date) leads to the filing of unnecessary motions, as demonstrated in this case. Such motions are a waste of the parties' time and money, as well as a waste of scare [sic] judicial resources.

Karakis v. Foreva Jens Inc., No. 08-61470-CIV-COHN, 2009 WL 113456, at *6 (S.D. Fla. Jan. 19, 2009); see Chavez v. Arancedo, No. 17-20003-CIV, 2017 WL 3025841, at *4 (S.D. Fla. July 17, 2017).

The court finds that Father Hedrick has established good cause for a protective order here. He has pre-existing scheduling conflicts on August 3. He personally organized a community volunteer event to construct a new playground for SCS, including fundraising and coordinating hundreds of volunteers, that will begin on August 3, 2022. He is participating in the building

---

[4] Contrary to plaintiff's counsel's representations, it appears no earlier depositions were scheduled unilaterally. Rather, the voluminous emails both sides attached to their pleadings reflect that, at least as relates to all deponents except Father Hedrick, there was a courteous and respectful give and take on deposition dates. See, e.g., Rec. Doc. 61, Exs. G, H, I, M. This makes it that much more perplexing that plaintiff has taken such an inflexible approach to this one deposition.

efforts, and as the leader of the Parish, he has determined that it is important that he be present to thank the volunteers. Additionally on August 3, 2022, Father Hedrick is hosting a meeting with Notre Dame Seminary to discuss the progress of his seminarian intern on campus. Father Hedrick will be interviewed as part of the process, and the interview is important to the future of the intern and potential future priest. In reporting his scheduling conflicts to plaintiff's counsel, defendants eventually provided six alternate dates in August.

The email negotiations between counsel indicate that plaintiff's counsel did not reveal why they were insisting on August 3. In opposition to the Motion to Quash, plaintiff provides some explanation:  K.K. and H.K. wish to attend and will have difficulty taking time off work to attend any other day. K.K. is the Chief Nurse Anesthetist at the medical facility where she works. She says the facility is short staffed. She reports that if she misses work on a date she is scheduled to be there, someone's surgery must be cancelled. She says that she must be available whenever the physicians who own the facility tell her that she must be available. She reports that she is scheduled to be in surgeries on all of the other dates that Father Hedrick has offered. H.K. is an Officer for U.S. Customs and Border Protection who inspects incoming ships at ports of entry, reviews passports of individuals arriving on incoming international flights, and facilitates trade and cargo at the Port of New Orleans. He must obtain permission from his employer to take time off work. He says requesting time off is very difficult because the agency is short staffed. He reports that he is scheduled to work on August 15, 17, 19, and 29—four of the six alternatives offered by Father Hedrick. Both parents report that they will have to arrange childcare for B.K. in order to attend the deposition.

The court respects the scheduling conflicts of K.K. and H.K. just as it respects the scheduling conflicts of Father Hedrick. [5]  All three have responsibilities at work that would be difficult to miss, and K.K. and H.K. may have to arrange childcare. Critically though, the court fails to see why no compromise could be reached. Trial is not until December 2022. The discovery deadline was, at the time this dispute arose, more than two months away. The parties still have eight weeks. Have the parties discussed how long the deposition is likely to take? Is the full seven hours provided by the Federal Rules of Civil Procedure even necessary? Could it be taken later in the day or on the weekend to accommodate everyone's schedule? Could it be taken over two days? Could the deposition be held at the school so that Father Hedrick could more easily address other obligations before, after, and on breaks? Has a virtual option been considered to allow H.K. and/or K.K. to observe from a location more convenient for their schedules and child-care obligations? Is it really necessary for both K.K. and H.K. to attend? Although they will not be excluded, their presence is not necessary or required for the deposition to proceed, and apparently they are not attending numerous others because according to plaintiff's brief, there are at least seven depositions that will take place between August 8 and September 14.

Perhaps most importantly here, plaintiff's counsel failed to make any attempt to find a mutually convenient date prior to scheduling the deposition and when he was informed of a scheduling conflict, he refused to explore the alternatives. Six alternative dates were offered. Although K.K. reports that she is scheduled for surgeries all six of those dates, H.K. is not scheduled to work for two of them. They have refused to offer even a single alternative date. Furthermore, plaintiff's refusal to cooperate extended beyond dealings with opposing counsel.

---

[5] Plaintiff's opposition to the Motion to Quash speculates that Father Hedrick may be accustomed to getting special treatment because he is a priest. No party here is receiving special treatment based on their title or status. The schedules of the deponent, the attorneys, and the parties must be considered and a mutually convenient date obtained to the extent possible.

When the court offered and even set a status conference to assist the parties in resolving the dispute, plaintiff would not agree to even consider the possibility of a compromise, insisting instead on a written ruling on the pending motion.

In the most generous light that can be cast on this matter, the actions of plaintiff's counsel in refusing to cooperate border on sanctionable. Federal law provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Unilaterally setting a party's deposition without making at least an attempt to find mutually agreeable dates and then refusing to consider possible compromises and demanding a motion to quash be filed results in unnecessary motion practice as the court in Karakis observed and as has occurred here. Plaintiff's counsel is warned to consider his obligations under §1927 as he continues to litigate this case. Counsel is further reminded of his obligations under the Louisiana Code of Professionalism, a number of which are implicated here:

- My word is my bond.
- I will conduct myself with honesty, dignity, civility, courtesy and fairness and will not engage in any demeaning or derogatory actions or commentary toward others.
- I will not knowingly make statements of fact or law that are untrue or misleading and I will clearly identify for other counsel changes I have made in documents submitted to me.
- I will be punctual in my communication with clients, other counsel and the court. I will honor scheduled appearances and will cooperate with other counsel in all respects.
- I will allow counsel fair opportunity to respond and will grant reasonable requests for extensions of time.
- I will not abuse or misuse the law, its procedures or the participants in the judicial process.
- I will cooperate with counsel and the court to reduce the cost of litigation and will not file or oppose pleadings, conduct discovery or utilize any course of conduct for the purpose of undue delay or harassment of any other counsel or party.
- I will not engage in personal attacks on other counsel or the court or use the threat of sanctions as a litigation tactic.

8

- I will support my profession's efforts to enforce its disciplinary rules and will not make unfounded allegations of unethical conduct about other counsel.
- I will work to protect and improve the image of the legal profession in the eyes of the public.
- I will endeavor to improve our system of justice.
- I will use technology, including social media, responsibly. My words and actions, no matter how conveyed, should reflect the professionalism expected of me as a lawyer.
- I will seek opportunities to be of service to the bench and bar and assist those who cannot afford legal help.
- I will be supportive of new members in the profession.
- I will stay informed about changes in the law, communication, and technology which affect the practice of law.

Considering the scheduling conflicts of Father Hedrick, the fact that the discovery deadline is eight weeks away on September 26, the fact that Father Hedrick offered six alternative dates in August alone, the fact that plaintiff's counsel wholly failed to work cooperatively as his professionalism obligations require, and the fact that K.K. and H.K., while welcome to attend, are not necessary participants to the deposition, the court finds good cause for a protective order (1) cancelling the August 3, 2022, deposition of Father Hedrick;  (2) requiring the parties to meet and confer in good faith to set Father Hedrick's deposition as soon as possible with due consideration of the schedules of all those involved;[6] and (3) requiring that plaintiff's counsel shall not unilaterally set any depositions in this case without prior leave of court. To the extent the parties reach an impasse in scheduling, the court remains available for a status conference.

## Conclusion

For the foregoing reasons, the Motion to Quash Notice of Deposition or Alternatively for a Protective Order (Rec. Doc. 56) is GRANTED. The August 3, 2022, deposition of Father Hedrick

---

[6] Plaintiff understandably expresses concern that the discovery date is September 26, and that they may need time to follow up on Father Hedrick's deposition with additional discovery requests if other relevant information, documentation, or even witnesses are identified.  If, despite due diligence, valid discovery needs arise jeopardizing the discovery deadline, the court can assist in remedying any prejudice resulting from same through an extended deadline, shortened response deadline(s), expedited scheduling, and the like.

is cancelled; the parties shall  meet and confer in good faith to set Father Hedrick's deposition as soon as possible with due consideration of the schedules of all those involved; and plaintiff's counsel shall not unilaterally set any depositions in this case without prior leave of court.

New Orleans, Louisiana, this 1st day of August, 2022.

Janis van Meerveld
United States Magistrate Judge